IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SYLVIA R. WARD,

    Plaintiff,

v.                                      No. 15-CV-403 MCA/KBM

HANGER PROSTHETICS AND
ORTHOTICS, INC., and BRAD
HORNICK, CPO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendant Hanger Prosthetics and Orthotics, Inc.'s Motion for Summary Judgment on Plaintiff's Claims of Negligence and Consolidated Memorandum of Law.* [Doc. 52] The Court has considered the submissions and the relevant law and has otherwise been fully informed in the premises. The Court hereby grants the *Motion*.

**BACKGROUND**

Consistent with the standard of review governing summary judgment, the following facts are either undisputed, or, where disputed, construed in the light most favorable to Plaintiff as the non-movant. *See Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). In May of 2006, Plaintiff Sylvia Ward was diagnosed with Buerger's Disease (BD), a progressive peripheral arterial disease that compromises the blood flow to Plaintiff's extremities and skin. [Doc. 52, Defendant's "Statement of Undisputed Facts" (hereafter, UF) 1, 2] From 2006 through 2013, Plaintiff required

1

several amputations due to her BD, including one toe, seven fingers, and both of her legs below the knee. [Doc. 52, UF 5, 6, 12-23] Plaintiff underwent a below the knee amputation (BKA) of her left leg on November 14, 2007, and a BKA of her right leg on October 20, 2011. [Doc. 52, UF 6, 19] Several of the amputations required a "re-amputation" or a "revision." [Doc. 52, UF 11, 14, 16] Her left leg stump required first a debridement[1] and later a revision [Doc. 52, UF 9, 11], and her right leg stump required a debridement [Doc. 53, Plaintiff's "Additional Facts" (hereafter AF) 64-66]. This lawsuit pertains only to the debridement required on the right leg stump, which Plaintiff alleges was due to Hanger's negligence in acting as the "provider of prosthetic devices to Plaintiff." [Doc. 53, p. 17]

On May 10, 2012, Jeff Pilgrim, a Hanger employee, evaluated Plaintiff and determined that she had a functional level assessment of K3 (this score is also referred to as a mobility predictor in the record), which means that Plaintiff "had the ability or potential to ambulate with variable cadence; perform activities beyond simple locomotion." [Doc. 52, UF 37] Mr. Pilgrim recommended a Harmony brand vacuum suspension prosthesis for Plaintiff's right leg. [Doc. 52, UF 36] Hanger was not the manufacturer of the prosthesis.[2] [Doc. 54, Defendant's Reply to Plaintiff's Statement of

---

[1] Debridement is "the usually surgical removal of lacerated, devitalized, or contaminated tissue." *Debridement Definition*, Merriam-Webster.com, Medical Dictionary, https://www.merriam-webster.com/dictionary/debridement#medicalDictionary (last visited March 21, 2018).
[2] Plaintiff does not assert that Defendant manufactured the prosthesis, and Defendant, in its *Reply*, claims it is manufactured by Ottobock, and submits a screenshot from what appears to be Ottobock's website (no URL is on the screenshot) which discusses the Harmony vacuum prosthesis, but does not state that Ottobock manufactured it. [Doc. 54-

Additional Facts (hereafter, RAF) 13]   On the recommendation of Mr. Pilgrim, Plaintiff's surgeon, Dr. Joseph Lopez, signed a prescription for the vacuum suspension socket for Plaintiff's right leg. [Doc. 52, UF 39; Doc. 53, AF 4, 5, 77-79] In mid-July, 2012, Hanger employee Danny Tatum, a prosthetist, cast and fit Plaintiff with the vacuum suspension prosthesis. [Doc. 52, UF 40, 41] On February 15, 2013, Mr. Tatum noted that Plaintiff had blisters on her right leg. [Doc. 52, UF 46] At some point in or after June of 2013, Plaintiff needed an ulcer on her right leg stump to be debrided. [Doc. 53, APF 63-66]

Defendant challenges the admissibility of "expert" testimony from Danny Tatum [Doc. 54, RAF 7] and the admissibility and sufficiency of testimony from Dr. Lopez to the extent it pertains to causation. [Doc. 54, RAF 4 & pp. 11-12] Based on these challenges, Defendant argues that Plaintiff has not presented evidence supporting her prima facie case of negligence. [Doc. 52, p. 1] The Court agrees with Defendant's argument with regard to Mr. Tatum, discussed below, and the Court agrees that Plaintiff cannot produce evidence of the violation of a duty without Mr. Tatum's testimony.

---

2]   As Plaintiff does not assert that it was manufactured by Defendant or provide evidence to that effect, for purposes of this *Motion* the Court determines that it was not manufactured by Defendant.
   Defendant also asserts that it did not distribute the Harmony vacuum prosthesis, however, the parties do not dispute that Defendant fitted Plaintiff with the prosthesis and provided it to her. This appears consonant with the meaning of a distributor as applied in *Parker v. St. Vincent Hospital*, 1996-NMCA-070, ¶ 23, 919 P.2d 1104 (characterizing the plaintiff's distributor liability claim as hinging on the hospital violating a duty to investigate the safety of implants before permitting their use on hospital premises), and thus, the Court, viewing the facts in the light most favorable to Plaintiff, determines for purposes of this motion that Hanger was a distributor of the Harmony vacuum prosthesis.

Accordingly, the Court needs not address, and does not set forth herein, the disputed testimony of Dr. Lopez.

During the course of these proceedings, Plaintiff identified Mr. Tatum as an expert witness. [Doc. 41, p. 1; Doc. 52, ¶ 51] Defendant filed a *Motion to Strike the Expert Report of Plaintiff's Disclosed Expert Witness Danny Tatum*. [Doc. 41] The parties reached an agreement on the dispute: Plaintiff agreed to withdraw Mr. Tatum as an expert witness and not to attempt to qualify him "as an expert witness in the future in this matter," and Defendant agreed to withdraw its *Motion to Strike*. [Doc. 44] The Court entered an order granting the parties' *Joint Motion to Withdraw Defendant's Motion to Strike the Expert Report of Plaintiff's Disclosed Expert Witness Danny Tatum*, ordering that Mr. Tatum could only testify as a fact witness, and ordering that Plaintiff "shall at no time hereafter attempt to qualify Mr. Tatum as an expert witness." [Doc. 45]

Now, at the summary judgment phase, Plaintiff cites to the deposition testimony of Mr. Tatum in several respects. Plaintiff cites to Mr. Tatum's testimony for the proposition that "[g]enerally when someone is missing both limbs, the mobility predictor would begin at K-2," and that the elevated vacuum device was a K-3 component and thus was improper for Plaintiff's K-2 level of functioning. [Doc. 53, AF 13, 48-52] Mr. Tatum further testified that he spoke to another prosthetist, who "is well regarded by our industry," and who told Mr. Tatum that the elevated vacuum was contraindicated in a patient with Buerger's Disease "[b]ecause of the cells and the chance of them clotting." [Doc. 53, AF 52; Doc. 53-3, p. 6] Finally, he testified "I don't believe there was anybody

who did" any research to determine whether the device was appropriate for a person with Buerger's Disease. [Doc. 53, AF 80; Doc. 53-3, p. 13]

Defendant objects to these statements as expert testimony, and asserts that Plaintiff agreed not to attempt to qualify Mr. Tatum as an expert. [Doc. 54, RAF 7] Defendant further argues that without expert testimony, Plaintiff cannot explain the applicable standard of conduct, and thus cannot survive summary judgment. [Doc. 54, p. 11]

**ANALYSIS**

### *Standard Governing Summary Judgment*

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(a), (c). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (internal quotation marks and citation omitted).

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks omitted). "Once the movant demonstrates no genuine issue of material fact, the

nonmovant is given wide berth" to demonstrate that a factual controversy exists. *MacKenzie*, 414 F.3d at 1273 (internal quotation marks and citation omitted). The Court views the evidence in the light most favorable to the nonmovant. *Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014). "Unsupported conclusory allegations, however, do not create an issue of fact." *MacKenzie*, 414 F.3d at 1273.

### *Plaintiff's Claim*

The parties dispute whether Plaintiff is bringing an "ordinary" negligence claim or a professional negligence claim. Plaintiff asserts that she is not bringing a medical or professional negligence claim. [Doc. 53, p. 17] Instead, she argues that Hanger provided prosthetics to her in a negligent manner. [Doc. 53, pp. 17-18] She primarily relies on two cases, *Parker v. St. Vincent Hospital*, 1996-NMCA-070, ¶ 26, 919 P.2d 1104 (characterizing a claim for negligence in the distribution of a medical device as "indistinguishable from ordinary liability for negligence") and *Mims v. Davol, Inc.*, 2:16-CV-00136-MCA-GBW, 2017 WL 3405559 (D.N.M. Mar. 22, 2017) (discussing the negligence claim identified in *Parker*). [Doc. 53, pp. 17-18]

In *Parker*, the New Mexico Court of Appeals held that insufficient policy grounds exist to hold a hospital liable under a theory of strict liability for a medical device, an implant, used at the hospital but not manufactured by the hospital. *Parker*, 1996-NMCA-070, ¶¶ 21-22. However, the Court stated that, "to the extent that the law should encourage hospitals to exercise care in permitting the use of medical products at their facilities, that determination should be made under traditional principles of negligence law." *Id.* ¶ 21. The plaintiff alleged that "the hospital violated a duty to investigate the

6

safety of the implants before permitting their use on its premises." *Id.* ¶ 23. While the Court ultimately remanded to the district court so that it could develop a record and make the initial determination of whether such duty existed, the Court acknowledged some support for such a duty. Particularly, the Court pointed to the Tentative Draft No. 2 of the Restatement (Third) of Torts, under which "a retail distributor of a prescription drug or medical device may be subject to liability if 'during the period leading up to the sale or other distribution of the drug or medical device the . . . distributor fails to exercise reasonable care and such failure causes harm to persons.'" *Id.* ¶ 26 (quoting Restatement (Third) of Torts: Products Liability § 8(e) (Tentative Draft No. 2, 1995)).[3] The Court stated that "[s]uch liability is indistinguishable from ordinary liability for negligence."[4] *Id.*

> In *Mims*, this Court, applying New Mexico law, stated:
>
> To prevail in a negligence claim related to a defective product, Plaintiff must "establish (1) the existence of a duty owed to Plaintiff[ ], (2) a breach of such duty, (3) a causal connection between [Defendants'] conduct and the injury to Plaintiff[ ], and (4) damages resulting from such conduct." *Parker v. E.I. DuPont de Nemours & Co., Inc.*, 1995-NMCA-086, ¶ 35.

*Mims*, 2017 WL 3405559, at * 4. The remainder of *Mims*, however, addressed claims against the purported manufacturer of the product, and thus provides little guidance to the case at hand, which concerns a distributor rather than manufacturer.

---

[3] As relevant to this case, the adopted Restatement (Third) of Torts' language is not materially different from the language of Tentative Draft No. 2 as cited in *Parker*. Restatement (Third) of Torts: Product Liability, § 6(e)(2) (1997).

[4] This sentence appears to only be meant to distinguish negligence from strict product liability, and does not address the disputed issue in this case, liability for professional negligence as distinguished from liability for the failure to exercise ordinary care.

7

Plaintiff asserts that her claim arises under *Parker* and disavows a professional negligence claim. [Doc. 53, p. 17] Defendant contends that this is a professional malpractice case. [Doc. 54, p. 8] As meritorious as Defendant's characterization of Plaintiff's claim may be, *see, e.g., Oakley v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 26, 399 P.3d 939 ("Where the defendant is a professional, the duty imposed by law is not the requirement to exercise 'ordinary care' under the same or similar circumstances but 'to apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances" (citation omitted); collecting cases), the Court accepts Plaintiff's characterization of her claim for purposes of this opinion. Accordingly, the Court will analyze whether Plaintiff has produced evidence demonstrating that Defendant was negligent under the theory enunciated in *Parker*. However, the Court must first consider Defendant's challenge to Mr. Tatum's testimony.

### *Expert or Lay Testimony by Mr. Tatum*

Defendant "objects to the presentation of Danny Tatum's testimony as that of an expert witness" based on Plaintiff's agreement not to seek to qualify Mr. Tatum as an expert and the Court's *Order* stating that Plaintiff "shall only be permitted to call Mr. Tatum as a fact witness in this matter." [Doc. 54, p. 5; Doc. 45] Plaintiff simply asserts that the testimony of Mr. Tatum as a former employee of Hanger and as a person who "actually serviced Plaintiff . . . is sufficient to support a claim Hanger breached its duty of ordinary care." [Doc. 53, p. 21] Plaintiff fails, however, to address the issue at hand – whether the testimony by Mr. Tatum on which Plaintiff relies is admissible as lay testimony under Federal Rule of Evidence 701.

Pursuant to Rule 701:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Rule 701 was amended in 2000 to add paragraph (c). The advisory committee's note to the amendment states:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701, advisory committee note to 2000 amendment. "[T]he distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *Id.* (internal quotation marks omitted) (quoting *Tennessee v. Brown*, 836 S.W.2d 530, 549 (1992)).

Our Tenth Circuit has distinguished lay from expert testimony by considering four factors: 1) whether the testimony is not based on technical, scientific, or otherwise skilled knowledge, that is, whether it is based on generally common knowledge requiring a limited amount of expertise; 2) whether the knowledge supporting the testimony was

9

gained by professional experience; 3) whether the witness relied on testimony or reports of other experts; and 4) whether the Federal Rules of Evidence generally classify the testimony at issue as lay or expert. *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214-15 (10th Cir. 2011); *United States v. Brown*, 654 F. App'x 896, 903 (10th Cir.) (2016) (unpublished decision). Stated plainly, "Rule 701 allows lay witnesses to offer observations that are common enough and require . . . a limited amount of expertise, if any." *James River Ins. Co.*, 658 F.3d at 1214 (internal brackets, quotation marks and citation omitted).

Mr. Tatum's testimony is not lay testimony as defined by Rule 701. Mr. Tatum testified regarding Plaintiff's mobility predictor number and whether the number assigned to her by other Hanger employees was proper. [Doc. 53, AF 47-52] He testified that the elevated vacuum device was a "K-3 component," and improper for Plaintiff who was at a K-2 level of functioning. [Doc. 53, AF 51, 52] He further testified that a prosthetist needs to understand disease processes and the effect a prosthesis will have on a patient's skin. [Doc. 53, ¶ 46] He testified that the elevated vacuum device was potentially harmful for a patient with BD, and that he learned this from another prosthetist. [Doc. 53, ¶ 52; Doc. 53-3, p. 6] Mr. Tatum's testimony concerning mobility predictors, prosthesis, diseases, and the interplay between the three is technical and specialized. It is not generally common knowledge. *See James River Ins. Co.*, 658 F.3d at 1214-15. While Mr. Tatum does not specifically, in the portions of his deposition provided to the Court, state that his opinions are based on his professional experience as a prosthetist, the only apparent source of his knowledge of prosthesis would be from professional

experience or training. Further, Mr. Tatum relied on the opinion (though not report) of another prosthetist. Finally, while the Rules of Evidence do not specifically address prosthetists' testimony, and the parties do not cite cases addressing whether particular testimony by a prosthetist was lay or expert, the Court notes opposing analyses and outcomes in the few cases it found. *See Ferley v. Watauga Orthopaedics, PLC*, 2013 WL 12036472, *4 (E.D. Tenn. 2013) (unpublished opinion) (concluding that testimony as to prosthetic device costs and usual life span by a prosthetic device salesperson who also assembled and fitted the devices falls within Rule 702 rather than 701); *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1240 (D. Kan. 2010) (concluding that testimony regarding the availability of prosthetic devices for the plaintiff, based on a review of the plaintiff's medical records, was within the purview of Rule 702); *but see Eady v. Hanger Prosthetics and Orthotics*, 2011 WL 1540360, *6 (N.D. Ohio 2011) (concluding that, for claim which did not require expert testimony to establish the standard of care, witness's testimony as to the proper procedures generally for fitting a prosthetic leg was sufficient information for a jury to determine whether defendant's conduct fell below an acceptable standard of care). The Court finds the analysis of *Ferley* and *Belisle* more persuasive. Accordingly, the Court concludes that Mr. Tatum's testimony cannot be admitted under Rule 701, and must be considered expert testimony.[5] *James River Ins. Co., LLC*, 658 F.3d at 1214-15; *Brown*, 654 F. App'x at 903.

---

[5] This conclusion lends support to Defendant's argument that the relevant standard of care is the duty of a professional to meet the duty of reasonable care, and that the ordinary care standard (i.e., "that care which a reasonably prudent person would use in the conduct of the person's own affairs," UJI 13-1603 NMRA) advanced by Plaintiff, is

The Court concludes that the testimony by Mr. Tatum on which Plaintiff relies can only be considered expert testimony, and Plaintiff has agreed not to present expert testimony through Mr. Tatum.  Other than Mr. Tatum's expert testimony, Plaintiff has not pointed to any evidence as to the standard of care (as to either assigning a mobility predictor or fitting a client with the proper prosthesis based on her medical condition) or that Hanger breached that duty.  Nor has Plaintiff identified any violation of the ordinary standard of care which a reasonably prudent person would use in the person's own affairs.  UJI 13-1603 NMRA.  Without such evidence, Plaintiff failed to demonstrate a genuine issue of material fact as a duty and a breach of the duty, essential elements of her claim of negligence, and thus the Court must grant summary judgment.

**CONCLUSION**

WHEREFORE, IT IS HEREBY ORDERED that *Defendant Hanger Prosthetics and Orthotics, Inc.'s Motion for Summary Judgment on Plaintiff's Claims of Negligence* [Doc. 52] is **GRANTED** and Defendant Hanger Prosthetics and Orthotics, Inc. is granted summary judgment.

**SO ORDERED** this 28th day of March, 2018 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
United States District Judge

---

insufficient to measure liability in this case.  In either event, without Mr. Tatum's testimony, the Court cannot determine what the appropriate duty was and whether Defendant breached that duty.